## PENNSYLVANIA RD CO v HASKIN

Ohio Appeals, 2nd Dist, Montgomery Co

No 1341. Decided Jan 30, 1936

Matthews & Matthews, Dayton, for plaintiff in error.

Jacobson & Durst, Dayton, for defendant in error.

### OPINION

By BARNES, PJ.

The above entitled cause is now being determined on proceedings in error from the rulings, orders, findings and judgment of the Court of Common Pleas of Montgomery County, Ohio. The parties will be referred to as they appeared in the trial court inverse to their order here. The plaintiff instituted her action in the lower court against the defendant Railway Company to recover damages for the death of her husband, Simon Haskin, who was struck by a steam locomotive claimed to have been negligently operated at an excessive speed, without warning of approach or kept under proper control. A fourth ground of negligence was also set out in that the crossing where the accident occurred was a much and frequently used highway, and that no watchman was maintained at this crossing.

The case was tried to a court and jury and a verdict returned for plaintiff in the sum of $5000.00. Motion for new trial was interposed, overruled and judgment entered on the verdict.

This is the final order from which error is prosecuted in this court. The following brief summary of facts will render understandable the nature of the controversy and the manner in which the claimed errors arise.

Plaintiff's decedent, Simon Haskin, was a man about fifty-three years of age, and at the time of the accident was engaged in the junk business.

In the conduct of this business he operated a Chevrolet truck, and at the time was trucking a load of barrels.

The accident occurred on the 15th day of November, 1933, at about 1:20 P. M. and at a point where Rosedale Avenue in Dayton, Ohio, crosses the single track of the Pennsylvania Railway Company.

The decedent was traveling in a southerly direction on Rosedale Avenue. This thoroughfare is approximately thirty feet in width and paved. The evidence discloses that it is a very busy thoroughfare located in the western outer district of the city of Dayton. Plaintiff's decedent had resided in Dayton for fourteen years, and for approximately eight years within about three squares of the scene of the accident.

At this point the Pennsylvania Railroad tracks run almost due east and west. Rosedale crosses at a slight angle, the angle being to the east as decedent was proceeding south. The crossing is at grade and practically level. The passenger train that struck decedent was proceeding westwardly. The truck was struck near its center and was carried on the cowcatcher of the engine for a distance of more than 700 feet before the train was stopped. The locomotive was pulling a passenger train, and included therein were mail and express cars, pullman and passenger cars and in all nine separate cars. The train from front to rear was more than 700 feet long. After the train stopped decedent was taken from the wreckage on the cowcatcher and rushed to the hospital where he died on the day following.

Something like ten feet east of the crossing a switch takes off from the main track to the north and after angling out to the requisite clearance distance proceeds east parallel with the main track a thousand feet or more. A second switch takes off of the aforementioned switch at a point

approximately 120 feet east of Rosedale Avenue and to the north extending in a general northeasterly direction to a coal yard. Plaintiff presents evidence that at the time of the accident there was located on the main switch a switch engine and several cars. The nearest point that any of the witnesses locate this switch engine and cars is 100 feet from Rosedale Avenue. Plaintiff introduced in evidence as Exhibit "A" plat showing Rosedale Avenue, the railroad tracks and switches and other objects and physical conditions in all directions from this railroad crossing. This plat, according to the testimony of the civil engineer making it, was drawn according to scale. According to his testimony the point of clearance of a train on either switch would be approximately 130 feet from Rosedale Avenue. On this plat are marked on the switch tracks what are designated breakers, and it is the contention of the engineer for the railway company that these breakers are the point of clearance. At these points the measured distance from center to center would be 13 feet. The distance of the breakers from Rosedale Avenue is 244 feet. East of Rosedale Avenue and north of the railroad track is located a one and one-half story cement block building used as a storage or packing house. This building is located 61 feet east of the east curb of Rosedale and 27 feet north of the main track of the railroad. Near the corner, southwest of the concrete building is located a large elm tree. To the west of the tree is located a brace pole and to the southwest, a large pole for carrying wires. All these buildings and structures and tracks are shown by photographs, introduced and presented in evidence as Exhibits 3, 4 and 6.

The defendant Railway Company denies all allegations of negligence. It admits that it did not have a watchman at this crossing, but instead maintained automatic flashers which through contact indicated the presence of a train within a distance of more than 1800 feet east and west on the main track. These flashers also would operate from moving locomotive or cars on the side-track if the switch was set for going in or out of such sidetrack. The evidence is uncontradicted that the flasher lights were working immediately preceding and at the time of the accident and continued to operate thereafter until after the train moved on. Plaintiff's petition alleges that the train was being operated at a speed of from 45 to 50 miles per hour. This was claimed to be in violation of an ordinance limiting the speed of trains at this location to 30

miles per hour; also claimed to be an excessive speed under the common law rule. In the introduction of testimony plaintiff presents no witnesses who gave any estimate of speed. Their claim is based entirely upon the physical fact as to the distance that this train moved after the impact, and according to the testimony of police officers who stepped off the distance it was 729 feet. The defendant railway company introduced several witnesses as to speed, and they range from 20 to 25 to 30 miles per hour, and one witness gave his estimate as from 30 to 35 miles per hour. Defendant's answer denies all allegations of negligence, and further avers that the decedent Simon Haskin was guilty of negligence proximately causing said accident in that he failed to heed signal by bell and flashers and that he failed to look and listen for said train before attempting to cross said tracks. The answer contains the further allegation that had the decedent Simon Haskin looked to the east when he was a safe distance from said railroad tracks he had a clear and unobstructed view and could have seen the locomotive approaching from the east.

Considering the record as a whole and all the evidence most favorable in support of the verdict and in the light of the decisions of the Supreme Court in this State, we are constrained to the view that the decedent Simon Haskin was shown to be guilty of negligence as a matter of law and therefore the defendant's motion to direct a verdict should have been sustained. The evidence is conclusive that the accident happened in the day time and that the flasher lights were operating. The fact that the decedent resided within three squares of this crossing, we think would fairly leave the inference that he was more or less familiar with such crossing. If not, the flashers would apprise him that he was approaching a railroad crossing and such is always a warning of danger. The uncontradicted evidence is that he was driving his truck at a speed of approximately 15 miles an hour and that he did not change or slacken his speed before the collision. At this rate of speed he would move 22 feet per second and the locomotive if proceeding at 45 miles per hour would move 66 feet per second, or if 60 miles per hour, 88 feet per second. Being a single track at the crossing the decedent had no other hazards to consider as frequently happens where there are a number of main tracks or switches to cross. At 22 feet from the crossing he was in a place of safety and the evidence is conclusive that up to a

point 100 feet east and more this locomotive would at all times be visible.

The photographs, Exhibits 3, 4 and 6, were taken with the camera in the center of Rosedale Avenue, and 17, 25 and 15 feet north of the north rail of the main track. Within this distance the switch engine or cut of cars on the sidetrack would not interfere with the vision even if we gave this testimony the most favorable consideration to plaintiff's theory. We have also given consideration to the possible faulty judgment of all witnesses relative to their estimates of speed. Within reasonable limits we have calculated the situation from the theory that plaintiff's speed might have exceeded or been less than the testimony, also likewise that the speed of the train might have exceeded even the claim in the petition. Under any of these varying conditions we still have the situation that the train was there to be seen, and had the decedent looked from his point of safety he could have seen the approaching train and have avoided the accident.

Crossing cases have been before the Supreme Court of our state on numerous occasions and it can serve no useful purpose to take up these cases separately and point out the similarity of facts whereby they impel our conclusion and determination. We will simply refer to and cite the several cases in point.

Pennsylvania R. R. Co. v Rusynik, 117 Oh St, 530;

C. D. & M. Elec. Co. v O'Day, 123 Oh St, 639;

Pennsylvania R. R. Co. v Moses, 125 Oh St, 621;

C. C. C. & St. L. Ry. Co. v Lee, Admr., 111 Oh St, 391;

Toledo Terminal R. R. Co. v Hughes, 115 Oh St, 562;

C. C. C. & St. L. Ry. Co. v Elliott, 28 Oh St, 341;

Railroad Co. v Kistler, 66 Oh St, 326;

R. R. Co. v Heck, 117 Oh St, 530;

• Buell, Admr. v R. R. Co., 114 Oh St, 40;

B. & O. R. R. Co. v McClelland, 69 Oh St, 142;

D. T. & I. R. R. Co. v Rohrs, 114 Oh St, 492.

In addition to the above we have also examined cases cited by counsel on both sides. Another case very frequently cited is B. & C. R. R. Co. v Goodman, 275 U. S., 66. The very drastic rule announced in the Goodman case has been modified by the Supreme Court of the United States. See Pocora v Wabash Ry. Co., 292 U. S., 98. Counsel for plaintiff refers to and quotes from a decision of this court in the case of B. & O. R. R. Co. v Davidson, Montgomery County. This case is found reported in 19 Abs, p. 406. About the only point of similarity is that the Davidson case was a crossing case. In the cited case we affirmed the judgment for the plaintiff as returned by the lower court. This case was not taken to the Supreme Court nor was there a motion filed to certify. We had before us and examined the several cases listed above. For a differentiation in the facts in the Davidson case and the instant case we make reference to the decision as found in 19 Abs, supra.

Finding as we do that our determination requires a final judgment it is unnecessary to refer to or pass on other grounds of error.

Final judgment will be entered for the plaintiff in error.

Exceptions will be allowed. Entry may be drawn according to this opinion.

HORNBECK and BODEY, JJ, concur.

## ON APPLICATION FOR REHEARING

Decided Feb 13, 1936

By THE COURT

We have before us application of counsel for defendant in error for rehearing in the above entitled cause. The memoranda appended strenuously objects to entry of final judgment as provided in the original opinion. It is urged that we should go no further than remand for new trial. This question was considered before the original opinion was released, and we thought then and still think that the authoritative cases in the light of the record required a final judgment.

The application for rehearing will be denied.

BARNES, PJ, HORNBECK and BODEY, JJ, concur.