**KIPP v BALTIMORE & OHIO RD CO et**

Ohio Appeals, 2nd Dist, Montgomery Co

No 1498. Decided June 21, 1938

Marshall & Harlan, Dayton, for appellant.

Sam D. Kelly, Dayton, C. W. Magsig, Dayton, for appellee.

## OPINION

By HORNBECK, J.

This is an appeal on questions of law from a judgment for plaintiff against the defendant the Baltimore & Ohio Railroad Company, in the sum of $7500.00. The action was for personal injuries suffered by plaintiff on the afternoon of April 23, 1936, when a truck in which he was riding was struck by an east bound engine of the defendant company.

The physical facts at and about the point of collision are set forth in the petition as follows: That Findlay Street in the City of Dayton runs in a northerly and southerly direction; that defendant company's railroad crosses Findlay Street parallel with the tracks of the Big Four Railroad Company, said tracks being separated by a distance of approximately thirty-five (35) feet; that the main track of the defendant company is to the south of the main track of the Big Four railroad; that there is a siding track along side the main track of the defendant company and to each side of the main track of the Big Four Railroad Company there is a siding; that between the said railroad crossing there is a watchman's shanty, which sits on the east side of Findlay Street; that on the west side of Findlay Street, within a few feet of the main track of defendant company is a long building which, the petition alleges, obscures the view of locomotives traveling on the main track of defendant company's railroad when said locomotives move in an easterly direction; that at the time of the collision there was on duty at said crossing a watchman whose duty it was to warn persons traveling on Findlay Street of the approach of locomotives on the tracks of both defendant company and the Big Four Railroad Company.

The petition further avers that the plaintiff was operating a Federal truck on Findlay Street and proceeding in a southerly direction and that as he approached the main track of the Big Four the watchman signaled him to stop, which he did until an eastbound Big Four passenger train had cleared the Findlay Street crossing; that immediately after said passenger train had cleared said crossing the watchman signaled plaintiff to come ahead and the watchman returned to his shanty; that the plaintiff proceeded across the tracks of the Fig Four and toward the tracks of defendant company's railroad; that when the front wheels of his truck came upon the main track of defendant company's railroad he was struck by an eastbound engine of defendant company, receiving injuries set forth in the petition.

The averments of negligence were: First, that defendant was operating its eastbound engine over and across Findlay Street without ringing a bell, sounding a whistle or giving any warning whatsoever of the approach of its engine; Second, that its watchman signaled plaintiff to proceed across its tracks when in truth and in fact plaintiff could not do so without being struck by its locomotive. The first specification of negligence was not presented to the jury.

The answer of the defendant averred that damages sustained by plaintiff were caused and brought about wholly and solely by his own carelessness and negligence. Upon the record the issues of the negligence of the defendant company and the contributory negligence of the plaintiff were raised.

There are twelve errors assigned, which are presented in the brief of counsel for defendant under four headings, namely: (1) Failure of the trial court to determine, as a matter of law, that the plaintiff was chargeable with contributory negligence. (2) Error of the court in giving special charges at the request of plaintiff, in refusing special charges requested by the defendant, errors in the general charge, most of these errors predicated upon the refusal of the court to accept the theory of the defendant of the law of the case and adopt-

ing the theory of the plaintiff. (3) Error of the court in refusing to set aside the verdict as being excessive, stimulated by passion and prejudice and (4) Error in the refusal of the court to set aside the verdict. because of misconduct of counsel for the plaintiff in argument to the jury.

The first error considered and argued capably and at great length in the briefs is the major and determinative question in the case. We restate some of the facts to indicate how the narrow question presented arises.

The plaintiff was driving a truck heavily loaded with iron. He was moving southerly on Findlay Street and he states near to the west side of the street. As he approached the first track the watchman at the crossing came out and by means of a stop sign in his right hand and a red flag in his left indicated the approach of a train on the Big Four. Plaintiff stopped his truck north of the Big Four and the oncoming passenger train came up to and passed the crossing. The watchman was serving in that capacity for both Big Four and B. & O. tracks.

The testimony of Kipp requires the conclusion that when the Big Four train had passed the watchman lowered his stop sign and with his flag signaled to the plaintiff to cross and moved away from the place where he had been standing in the direcion o' his shanty. The testimony of the watchman differs from that of Kipp respecting his signaling to the plaintiff to cross. The watchman denies that by any movement he invited or directed the plaintiff to move on across the B. & O. tracks.

The testimony of witnesses for the defendant establishes that the plaintiff could have seen the oncoming locomotive of defendant company at a distance of several hundred feet from a point in Findlay Street when twelve feet to the north of the south track of the B. & O. The testimony of plaintiff is to effect that his view of the oncoming locomotive was obstructed by the tool house of the B. & O. to an extent that he could not see the locomotive until within about eleven feet of the south track of the B. & O. and that his position at the wheel was some six feet back of the front of the hood of his truck. There is no doubt of the familiarity of plaintiff with the physical situation at and about the place where the collision occurred. It appears that the plaintiff did not look for the oncoming locomotive of the B. & O. from the time when he crossed the Big Four tracks until he was struck.

At the outset we are met with the conflicting claims of the parties as to the import and meaning of plaintiff's testimony, undenied and uncontradicted. It is the claim of the plaintiff that his testimony discloses that the watchman expressly invited him to move onto and across the B. & O. tracks. The defendant insists that such interpretation cannot be placed upon plaintiff's testimony. This dispute is so vital to the right of the plaintiff to present the succeeding question that we quote parts of the record setting forth plaintiff's testimony. At page eight, plaintiff testifying:

"A. After the track was clear, the old man dropped his paddle and he give me that with the red flag. That signifies come on. (Makes motion with hand at side of body)."

And again at same page:
"When that watchman signaled me across, I came on 'across,"

And later on cross examination:
"Q. Did you listen for a bell?
A. No : didn't listen for no bell for when that watchman signaled me to—
Q. You didn't listen?
MR. KELLY: Let him finish.
Q. What was that?
A. When that watchman signaled me across, I came on across and I just kept right on going.
Q. You didn't either look or listen when you came to the B. & O. track?
A. That is what that man was there for. He signaled me across and I went right on through.
Q. You relied absolutely then on the fact this crossing watchman walked over there put down his, or started to put down his signal over there by the shanty?
A. That is right.
Q. And you didn't look or listen for a train in going on to this track?
A. Not when a watchman flags me across."

This testimony in our judgment required the conclusion that the jury had the right to find, if it believed the statement of plaintiff, which it had the full right to do, that the watchman for defendant company signaled the plaintiff that the tracks of defendant company were clear for him to pass onto and over them. We then have this factual situation upon the most favorable view of the evidence in behalf of the plain-

tiff, namely, an intersecting crossing at which toward the west the view of plaintiff was impaired until he reached a place some eleven feet to the north thereof. Failure on the part of plaintiff to look at any time when looking would be effective as he approached the crossing. Does this factual proof require the conclusion that as a matter of law the plaintiff was chargeable with contributory negligence? Supporting the affirmative of this proposition we are cited by defendant to the following Ohio cases:

Railroad Company v Kistler, 66 Oh St 326.

C.C.C. & St. L. Rd. Co. v Lee, Admr., 111 Oh St 391.

Buell v N. Y. Central Rd. Co., 114 Oh St 40.

D. T. & I. Rd. Co. v Rohrs, 114 Oh St 493.

Toledo Terminal Rd. Co. v Hughes, 115 Oh St 562.

Penn. R. R. Co. v Rusynik, 117 Oh St 40.

C. D. & M. Electric Co. v O'Day, 123 Oh St 639.

Penn. R. R. Co. v Moses, 125 Oh St 621.

Uncapher v B. & O. Rd. Co., 127 Oh St 351.

Lohrey v B. & O. Rd. Co., 131 Oh St 386.

Penn. R. R. Co. v Haskin, 21 Abs 289.

Linch v R. R. Co., 48 Oh Ap 295.

Motor Freight Co. v L. & N. Rd. Co., 56 Oh Ap 246.

Plaintiff on this question cites and relies on Railway Co. v Schneider, 45 Oh St 678 and C. C. C. & St. L. Ry. Co. v Hosler, 25 Oh Ap 531. It is not necessary to consider and discuss all of the cited cases. Most of them establish or support the general rule that one about to move over a railroad crossing is required to look and listen and to do so when such looking and listening would be effective. In some of the cases cited the crossings were at grade without any automatic signal, warning gates or watchman present at the crossing. These cases are not particularly helpful because here we are concerned with the question whether or not the facts required an exception to be made to the general rule. We then consider only those cases wherein there have been urged and treated facts wherein it was claimed that there should be an exception to the general obligation upon a person to look and listen as he was about to pass over a railroad crossing.

We consider some of these cases cited by the plaintiff. Among them were Penn. Rd. Co. v Moses and C. D. & N. Electric Co. v O'Day, both of which we reviewed. These two cases grew out of collisions occurring at railroad crossings where the defendant

companies had placed automatic signal devices. In both of them the facts supported the conclusion upon plaintiff's case that the devices were not working at the time plaintiff's decedents were about to go onto the track and thus they were deprived of this danger signal. Notwithstanding, it was held that they were not excused from the obligation to look and listen seasonably for an oncoming train.

In the O'Day case Judge Allen in the opinion took the view that the presence of of an automatic signal alarm, voluntarily instituted by defendant company, was not to warn those approaching the crossing of the imminence of an oncoming train but "merely to impress upon the mind of the approaching traveler more vividly than by any other means that before him lies a dangerous track which he must cross." We think it fortunate that the court did not embody this conclusion in the syllabus. It certainly is the common conception of travelers that when a flasher signal is operating at a railroad crossing it means that a train is approaching or leaving that crossing. Likewise, the practical effect of the failure of such signals to operate at railroad crossings amounts to an implied representation that no train is about to move over that crossing.

The court in Lohrey v B. & O. Rd. Co., supra, refers to the O'Day and the Hughes cases with approval. In this case the court held that as a matter of law a driver was contributorily negligent who approached a railroad crossing where safety gates were maintained but at that moment he was warned by the descending gates of the danger from the approaching train. Judge Williams dissented in this case and cited and discussed Railway Co. v Schneider, supra.

In the Lohrey case the court put upon the traveler the obligation of having his automobile under such control as that when the gates began to descend he could stop instead of driving on through and over the crossing. Obviously, gates, the second that they begin to fall, operate to warn the oncoming traveler of danger of an approaching train. This is commonly recognized by the traveling public. However, as they are manually controlled it is somewhat difficult to distinguish it from the cases where watchmen are guarding the crossing as in the Schneider case, supra.

In the Hosler case, supra, the court referred with approval to Kasky v B. & O. Rd. Co., 23 Oh Ap 185, which it had theretofore decided. The Kasky case held that

where gates at a crossing are up and the watchman being present does not give warning of impending ` danger, it is a question for the jury to determine whether or not under all the circumstances a pedestrian being hit by a passing train is guilty of contributory negligence. The court cited and followed Railway Company v Schneider, supra.

It also cited and quoted from Baltimore & Potomac Rd. Co. v Landrigan, 191 U. S. 461-475, where Mr. Justice McKenna said:

"Gates at a railroad crossing have a useful purpose. Open, they proclaim safety to the passing public; closed, they proclaim danger."

The eminence of this authority entitles it to more than passing consideration by state reviewing courts.

The case upon which counsel for the defense puts the most reliance is Uncapher v B. & O., supra. The court there held that the plaintiff was chargeable with contributory negligence as a matter of law. He was moving west in an automobile on East Market Street, Lima, Ohio. When within twelve feet of the most easterly track he brought his automobile to a stop to await the passage of a Nickel Plate passenger train traveling south on the second track from the east. At that time the watchman of the B. & O. was stationed in Market Street giving the usual warning of the approach and presence of the train on the Nickel-Plate. After this train had cleared the crossing the watchman left his station, took down his lantern and swung it to his side and started toward his shanty, thereby indicating that the crossing was cleared. After the watchman had moved some twelve feet toward his shanty the plaintiff started his automobile and as its rear was upon the easterly track a freight train on the B. & O. approaching from the south on that track, collided with the rear end of the automobile of plaintiff.

This authority approaches the instant case more nearly in its facts than any of those cited by the defendant. Much of the opinion of Judge Stephenson is directed to a phase of the case other than the contributory negligence of the plaintiff. Some of the material facts do not appear, notably, whether or not the watchman was acting for and on behalf of the B. & O. We presume that he was. In this situation the only difference between the cases is that at the most the plaintiff in the cited case had

but an implied invitation to go onto and across the tracks of the B. & O., while in the instant case he had an express invitation so to do.

Judge Williams, who dissented in the Lohrey case, concurred in the O'Day case. As we follow the reasoning in his dissent we have some difficulty in reconciling his concurrence in the O'Day case.

In our judgment Railway Company v Schneider, supra, is a most interesting authority here and as Judge Williams says we find much in the original sources of the law to support it. Notwithstanding, the many cases involving the question of the obligation of a traveler at railroad crossings, the Schneider case has not been reversed and we must assume that the court had it in mind when it considered and decided cases arising subsequently thereto. The third proposition of the syllabus reads:

"When gatemen are maintained at such crossings, (namely, across generally traveled public streets in a populous town), it is their duty to observe the tracks and know when, on account of trains or engines thereon it becomes dangerous for persons to cross, and when it is so, to close the gates, and keep them closed to prevent persons from going upon the tracks so long as the danger continues; and when the tracks are clear, or persons may cross without danger from passing cars and locomotives, then to open the gates and keep them open to enable persons to cross, so long as it is safe for them to do so, but no longer. Persons approaching the crossing or about to cross have the right to presume, in the absence of knowledge to the contrary, that the gatemen are properly discharging their duties, and it is not negligence on their part to act on the presumption that they are not exposed to dangers which can arise only from a disregard by the gatemen of their duties. Hence an open gate with the gateman in charge is notice of a clear track and safe crossing, and in the absence of other circumstances, when the gates are open and gatemen present, it is not negligence in persons approaching the crossing with teams to drive at a trot, or pass on to the tracks through the open gates without stopping to listen, though the view of the tracks on either side of the crossing is obstructed; nor in such case is their failure, when at a distance of twenty-five feet from the track, to look for locomotives one hundred and fifty feet or more from the crossing, negligence, though they could have been seen."

After all, this case presents nothing more than an implied invitation to the traveler to cross the tracks.

The only case in point with the facts here is C.C.C. & St. L. Ry. Co. v Hosler, supra, the syllabus of which sets forth the controlling facts and the law as there announced:

"Where a railroad company, on its right cf way, places cars and maintains buildings which obstruct the view of travelers approaching a street crossing of such railroad in a village, and the railroad company maintains a watchman at such crossing, and, when a train is approaching such crossing, said watchman beckons a traveler in an automobile on said street to cross said railroad, such traveler has a right to assume, in the absence of knowledge to the contrary, that such watchman is properly discharging his duty, and is bound to exercise only such care as persons of ordinary prudence are accustomed to exercise under such circumstances, and his failure to look and listen as he approaches said crossing is not negligence, as a matter of law."

There are some facts in the Hosler case which do not appear in the instant case. For instance, the extent to which the view of the respective travelers was obstructed differs some. It appears that Hosler did, at a certain place as he approached the crossing, look for an oncoming train. No evidence of any looking appears in the instant case. However, any looking which the plaintiff may have done in this case would not avail him unless such looking was done when it would have been effective if he was required to look in all events.

Much is made by counsel for the defendant of the failure of the plaintiff to look at all after he had passed over the Big Four tracks. This, of course, was a very proper observation as it affected the question of his exercise of ordinary care, but we do not believe that it is determinative against him cf an utter failure to exercise the degree of care required. It is understood that in all the observations we are making we are considering this case in the most favorable light for the plaintiff under the evidence. Obviously no error could be assigned on the weight of the evidence had the jury found that under the facts the plaintiff was chargeable with contributory negligence.

The instant case is stronger in its facts than any of the cited Supreme Court cases and differs from them in that in none of these cited cases was there an express invitation to the traveler to move onto and across the tracks toward which an oncoming train was approaching. In the instant case that factor is found, namely, an express invitation extended by an employee of the defendant company to a traveler to move onto and across the tracks of defendant company. In this situation it is our opinion that there was a question of fact for the jury whether or not the plaintiff acted with ordinary care in going onto the crossing without looking for the oncoming locomotive.

We might say at this juncture that there are some circumstances which corroborate the testimony of the plaintiff that the watchman did signal the plaintiff to move forward and across the B. & O. tracks. It appears that the locomotive which was moving on the B. & O. crossing and which struck plaintiff was not regularly scheduled and its presence was unknown to the watchman. In this situation it would have been the normal reaction for the watchman to have indicated to the plaintiff that it was safe for him to move on his way. Likewise, there is some support in the claim of the plaintiff that his vision was badly obstructed by the presence of the tool house in the testimony of one of the crew operating the locomotive, who says that he was looking straight ahead and that he did not see the truck until it was right in front of him.

We do not deem it necessary to discuss the other errors assigned. We have examined them carefully but are of the same opinion as the trial judge, namely, that no prejudicial error intervened in the particulars assigned.

The judgment will be affirmed.

BARNES, PJ, and GEIGER, J, concur.